## MAST, FOOS & CO. v. DEMPSTER MILL MANUF'G CO.

### (Circuit Court, D. Nebraska. January 14, 1896.)

1. PATENTS—ABANDONMENT OF INVENTION.

   Under Rev. St. §§ 4886, 4920, the defense of abandonment to the public is separate and distinct from that of prior use during two years prior to the application, and an abandonment may take place within the two years preceding the application. Andrews v. Hovey, 8 Sup. Ct. 101, 123 U. S. 267, and 8 Sup. Ct. 676, 124 U. S. 694, followed.

2. SAME—WHAT CONSTITUTES ABANDONMENT.

   The manufacture and sale in the usual course of business, to the public generally, of machines embodying a completed invention, for a period of several months before applying for a patent, and without having filed any caveat, constitutes an abandonment of the invention to the public.

3. SAME—PLEADING AND PRACTICE.

   Where a patent sued upon contained upon its face a recitation that the invention was in practical operation and on the market in considerable numbers at the date of the application, and that the facts therein stated in regard to its operation had been ascertained from commercial experience with it, *held*, that the court was authorized, of its own motion, although abandonment had not been pleaded as a defense, to declare the patent invalid, on the ground that this recitation was proof of abandonment.

This was a bill in equity by Mast, Foos & Co. against the Dempster Mill Manufacturing Company for alleged infringement of a patent relating to an improvement in windmills. The cause was submitted for final hearing on the pleadings and proofs.

H. A. Toulmin, for complainant.

H. W. Pennock and L. L. Morrison, for defendant.

SHIRAS, District Judge. The bill in this case is based upon letters patent No. 433,531, applied for by Samuel W. Martin, and issued to the complainant corporation, as the assignee of the inventor, and covers an improvement in the machinery of windmills, it being charged that the defendant company is engaged in the manufacture and sale of windmills which embody the improvement covered by the above-named letters patent, and is therefore an infringer upon the rights of complainant. To this bill the defendant company answers, denying infringement, and averring that the combination described in the first claim of the Martin patent, which is the one relied on by complainant, lacked novelty, and had been anticipated by other known and patented devices and combinations.

Upon the conclusion of the argument by counsel, which very fully covered the points thus stated, the court called attention to the following statement, found in the specifications of the letters patent, and asked counsel whether, upon the face of the patent, it was not shown to be void, the statement being as follows, and being found at the conclusion of the descriptive part of the specifications, and immediately preceding the portion setting forth the claims of the applicant, to wit:

"The invention is in practical operation and on the market in considerable numbers, and the facts here stated with regard to its operation are such as have been ascertained from commercial experience with it."

In response to the inquiry, counsel for complainant contended that public use was permitted for a period of two years before the application was filed, by the provisions of the statute now in force, and therefore the suggestion of the court was not well founded. I have, since the submission of the case, given the matter some consideration, and I still adhere to the suggestion made, namely, that the patent upon its face recites a condition of facts that shows that the patentee had abandoned the invention to the public before he made application for his patent, and therefore the patent upon its face shows that it is invalid.

Section 4886 of the Revised Statutes is as follows:

"Any person who has invented or discovered any new and useful art, machine manufacture or composition of matter, or any new and useful improvement thereof, not known or used by others in this country and not patented or described in any printed publication in this or any foreign country before his invention or discovery thereof, and not in public use or on sale for more than two years prior to his application, unless the same is proved to have been abandoned; may, upon payment of the fees required by law, and other due proceedings had, obtain a patent therefor."

Under the provisions of this section, the defense of abandonment is separate and distinct from that of having been in public use or on sale for a period exceeding two years; and, in section 4920, it is further enacted that the defendant, under the general issue, upon giving 30 days' notice, may prove:

"Fifth. That it had been in public use or on sale in this country for more than two years before his application for a patent, or had been abandoned to the public."

In Elizabeth City v. Pavement Co., 97 U. S. 126–134, it is said:

"An abandonment of an invention to the public may be evinced by the conduct of the inventor at any time, even within the two years named in the law."

In the case of Fruit-Jar Co. v. Wright, 94 U. S. 92, it is expressly decided that, under the act of 1839, there were two defenses, among others, upon the issue of the validity of a patent, to wit: Purchase, sale, and prior use of invention for a period of two years antedating the application of a patent; and, second, an abandonment of the invention to the public.

In Andrews v. Hovey, 123 U. S. 267, 8 Sup. Ct. 101, the provisions of the acts of 1836, 1839, and 1870 are collated, compared, and explained; and it is shown that under the provisions of the act of 1870, which now forms sections 4886 and 4920 of the Revised Statutes, the defense of abandonment to the public is separate and distinct from that of prior use, and that it may be proved by evidence showing the purpose to abandon the invention to the public, and that, if thus proved, it will be a defense, although the abandonment took place within the two-year limit applicable to cases of prior public use or sale. This case again came before the supreme court upon a petition of rehearing, and a full review of the decided cases was had, the result being that the prior ruling was sustained. See 124 U. S. 694, 8 Sup. Ct. 676.

In view of these rulings of the supreme court and the express language of sections 4886 and 4920 of the Revised Statutes, it is clear that if it is made to appear that, before filing an application for a patent, the inventor had abandoned the invention to the public, the patent, if issued, will be held invalid.

Upon the face of the patent now under consideration, it appears that, previous to the date of the filing of the application, the inventor had put the invention into practical operation; that considerable numbers of mills embodying the improvement had been put upon the market for sale; and that the facts recited in the application, as evidence of the value and usefulness of the combination, had been ascertained from commercial experience with it. These statements preclude the idea that the use made was experimental. The recitals show that the invention or combination had been perfected so as to make it practical. Numbers of mills had been put upon the market, and upon the knowledge derived from this extensive commercial use the patentees relied for proof of the successful working of the combination. Certainly, the facts thus stated by the applicant are strong evidence of abandonment. If an inventor, after perfecting his invention, places it upon the market in large or considerable numbers, and sells to all who desire to purchase, and continues so to do for months, without applying for a patent, no other conclusion can be drawn than that he does not intend to apply for a patent; and he cannot be permitted, after having made public the knowledge of his invention, and induced many persons to purchase, to then conclude that the invention may be worth patenting, and that he will debar the public from using the knowledge they have acquired from him by procuring the issuance of a patent. It is well settled that delay in applying for a patent may be explained and be excused by reason of sickness or inability to furnish the means needed to procure a patent, and also a sale or sales may be made under circumstances which are not inconsistent with an intent to apply for a patent. Primarily, the defense of abandonment is based upon matters of fact, and each case will depend upon the facts proven therein; the legal conclusion being that if, in fact, the inventor did abandon his invention to the public, then he cannot afterwards obtain a valid patent therefor.

In this case the facts recited on the face of the patent must be held to be true as against the inventor and his assignee. The evidence shows that Martin was in the employ of the complainant corporation; that Mast, Foos & Co. is a corporation with a paid-up capital of $200,000, and largely engaged in the manufacture of windmills; that beginning in December, 1888, the work upon the improvement devised by Martin was done in its shops; and that Martin assigned his rights to complainant before the patent was issued. There is nothing developed in the evidence tending to explain away the delay in applying for a patent, or to show that the complainant corporation engaged in the sale of the machines for any other purpose than to make money out of the same, or, in other words, as a purely commercial undertaking; or, to put it in the language used by counsel for complainant in his brief, "complainant had been manufacturing and

selling windmills since about 1877, when, in 1889, it began putting on the market this Martin invention." When this putting on the market began, which was some months before the application for a patent was filed, the invention had been perfected, and nothing was done to warn the public that the combination thus put upon the market, and which they were solicited to purchase, would ever be made the subject of a patent. The officers of so well-known and extensive an establishment as is Mast, Foos & Co. must have known that if they had an inchoate or partly-developed invention, which they wished to further experiment with, a caveat could be filed for their protection; or if they had a perfected invention which they wished to immediately put upon the market, without awaiting the delay incident upon the procurement of a patent, they could at once file an application in the patent office, as is provided in section 4881 of the Revised Statutes; and, having done so, they could then sell all the machines they could find purchasers for, and, if a patent was subsequently issued upon the application filed, it would not, in such case, be invalidated by the sales made pending the hearing upon the application. No such action was taken. The complainant company engaged in the manufacture and sale of the Martin combination without taking the preliminary steps required by the statute for obtaining a patent. Such action on its part is wholly inconsistent with the idea that when the company, in 1889, engaged in the sale of the Martin combination to the public, it was the purpose of Martin, or of the company as his assignee, to apply for a patent. It is consistent with the idea that, in 1889, Martin and the company regarded the combination as a possible improvement, and therefore were willing to engage in the manufacture and sale thereof; but subsequently the commercial success of the new form of windmills was such that Martin and his employer, the complainant herein, concluded that the combination was worth patenting, and therefore, on May 2, 1890, an application for a patent was filed. If a person, having perfected an invention, engages in the manufacture and sale thereof to the public generally, without then intending to apply for a patent, he thereby dedicates or abandons the invention to the public; and he cannot, after making public the knowledge of his invention in this manner, be permitted to change his mind, and, by obtaining a patent, compel the public to forego the use or advantage of the knowledge which he freely communicated by making sales of machines embodying and displaying his invention. Having, by his own voluntary act, and in consideration of the money paid him for the machines sold, made public property of his invention, he cannot offer a consideration for the creation of a monopoly in him by the act of the government in granting him a patent. The usual consideration which supports the grant of the monopoly, created by letters patent, is the fact that in return therefor the inventor gives to the public the knowledge of the invention, which, after the lapse of the patent, becomes the absolute property of the public. But, if the public already possesses the knowledge and right to use it, the issuance of a patent would be a restriction upon the public, instead of securing to the

public knowledge of a valuable invention, with the right; ultimately, to the free use thereof. It certainly must be true that up to May 2, 1890, when the application for a patent was filed, every person purchasing a windmill embodying the Martin combination, whether from Mast, Foos & Co. or any one else, had the right to assume that he was dealing with machines not covered by a patent. Suppose a manufacturer of windmills had purchased one of these mills, or had seen it in operation in the hands of some one who had bought it of complainant, before the application for a patent was filed, and, being impressed with its advantages, he had concluded he would adopt it in his establishment. An examination of the records would then have shown that the combination was not patented, and that no application for a patent had been filed, and inquiry as to the facts would have shown that these windmills were being manufactured and sold by Mast, Foos & Co. to the public generally. Certainly, the manufacturer in the supposed case would have the right to embody the improvement in the mills by him made, and he might, to that end, invest much money and time in changing his patterns, his machinery, and in printing new catalogues to advertise the changed form of his windmills. Could the complainant, after all this expense had been incurred, by filing an application for a patent, and procuring the issuance thereof, compel such manufacturer to abandon the manufacture and sale of mills embodying the Martin combination, and to submit to all the loss resulting therefrom, when it appeared that the manufacture thereof had been entered upon, and the cost necessary therefor had been incurred, at a time when, by the voluntary act of the complainant, the Martin combination was being sold to the public generally, without being protected by a patent issued or applied for. It seems to me that the statement of the proposition ought to be its sufficient refutation; and, as this court cannot know how many persons throughout the United States may have been thus induced to undertake the manufacture of mills of the Martin pattern, it is the duty of the court to prevent the possibility of loss to them, by holding that Martin and the complainant corporation must be held to have abandoned to the public the right to the free use of the combination in question, by reason of the fact that they engaged in the manufacture and sale of the combination to the public generally, and continued so to do for months before applying for a patent. I have had some doubt whether the court could consider this question, in view of the fact that the defense of abandonment is not pleaded by defendant, either specially or by written notice under the general issue, which ordinarily would be required in order to let in the proof of the facts showing abandonment.

But, as already stated, the facts constituting proof of abandonment are recited on the face of the patent; and when complainant introduced the patent, in support of the averment in the bill that complainant was the owner of valuable letters patent covering the Martin combination, it was the duty of the court to examine the patent to see whether, in form, they were legal and valid; and, in so doing, the court became advised of a condition of facts which, in the.

judgment of the court, invalidated the patent on its face, and, the invalidity thus appearing, it is within the power of the court to declare the patent invalid. The conclusion thus reached relieves the court from the need of considering the issues arising upon the answer. Complainant's bill will therefore be dismissed upon the merits, and with costs.